# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* COX MEDIA, INC.,
a Delaware corporation. Additional Parties form
is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL*
*DEMANDANTE):* ED WILSON, an individual,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**11/06/2023 5:43 PM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By E. Galicia, Deputy Clerk**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles Superior Court, Central District
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
23STCV27244

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JEFFERY D McFARLAND (SBN 157628) ELAINE LI (SBN 333529)
EISNER LLP, 433 N. Camden Dr., 4th Floor, Beverly Hills, California 90210
Telephone: (310) 855-3200

David W. Slayton, Executive Officer/Clerk of Court

DATE:
*(Fecha)* 11/06/2023

Clerk, by
*(Secretario)* E. Galicia , Deputy
*(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Exhibit A - Page 2

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Ed Wilson v. Cox Media, et al | 23STCV27244 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

APOLLO GLOBAL MANAGEMENT, INC.,a Delaware corporation; COX REPS, INC., a Delaware corporation; HOUSTON MCCURRY, an individual; and DOES 1 through 100, inclusive,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A - Page 3

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/06/2023 5:43 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

JEFFERY D McFARLAND (SBN 157628)
jmcfarland@eisnerlaw.com
ELAINE LI (SBN 333529)_
eli@eisnerlaw.com
EISNER LLP
433 N. Camden Dr., 4th Floor
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Plaintiff
Ed Wilson

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| ED WILSON, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> COX MEDIA, INC., a Delaware corporation; APOLLO GLOBAL MANAGEMENT, INC., a Delaware corporation; COX REPS, INC., a Delaware corporation; HOUSTON MCCURRY, an individual; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 23STCV27244 <br><br> **COMPLAINT FOR:** <br><br> **1. BREACH OF CONTRACT** <br> **2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> **3. INTERFERENCE WITH CONTRACT** <br> **4. INTERFERENCE WITH ECONOMIC RELATIONS** <br> **5. FRAUD** <br> **6. QUASI-CONTRACT/UNJUST ENRICHMENT** <br> **DEMAND FOR TRIAL BY JURY** <br><br> Action Filed: <br> Trial Date:          None Set |

EISNER, LLP

2844808

1

COMPLAINT

Exhibit A - Page 4

Plaintiff Ed Wilson ("Plaintiff"), for his complaint against defendants Apollo Global Management, Inc., Houston McCurry, Cox Reps, Inc., Cox Media, Inc. and DOES 1 through 100, inclusive (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

In 2020, following a highly publicized PR crisis, Apollo Global Management, Inc. ("Apollo") claimed to be setting out to revamp the firm's cutthroat culture and rough-edged image. Unfortunately, as plaintiff Ed Wilson found out the hard way, nothing has changed at Apollo. In fact, a new generation of employees continue to be trained to undertake the same cutthroat and sharp-elbowed approach to deal making. As set forth in detail below, despite Wilson delivering everything that was asked of him while running a subsidiary of Cox Media, Inc. ("Cox Media"), Houston McCurry, the twenty-something Apollo employee assigned to watch Apollo's investment in Cox Media, refused to honor the promise made to Wilson of a 5% stake in the subsidiary telling him "What are you gonna do, sue us? Go ahead, we will bury you in legal fees." Undeterred, Plaintiff Wilson brings this action to receive what he was promised – despite Apollo's threats.

## THE PARTIES

1.      Plaintiff Ed Wilson ("Wilson") is, and at all relevant times mentioned herein was, an individual residing in the State of California, County of Los Angeles.

2.      Defendant Cox Media, Inc., d/b/a Cox Media Group ("Cox Media") is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, and doing business in California. Cox Media is headquartered in New York, and owns various brands across the United States.

3.      Defendant Cox Reps, Inc. ("CoxReps") is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware. CoxReps is headquartered in New York and operates eleven offices across the United States – including an office in Los Angeles, California.

4.      Defendant Apollo Global Management, Inc. ("Apollo") is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of

EISNER, LLP

2844808

2

COMPLAINT

Delaware, and has an office in Los Angeles, California.

5. Defendant Houston McCurry ("McCurry") is, and at all relevant times mentioned herein was, an individual residing in the State of New York.

6. Plaintiff is informed and believes, and on that basis alleges, that, Defendants DOES 1 through 100, inclusive, are individually and/or jointly liable to Plaintiff for the conduct alleged herein. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time. Accordingly, Plaintiff sues Defendants DOES 1 through 100, inclusive, by fictitious names and will amend this Complaint to allege their true names and capacities once ascertained.

7. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all acting within the course and scope of the agency of and/or employment by the others, each and all acting in concert one with the other and all together.

8. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were, and are, the agents, servants, alter egos and/or employees of each of the other Defendants, and all the things alleged to have been done by Defendants were done in the capacity of and as agent, servant, alter ego and/or employee of and for the other Defendants, with their knowledge approval, and ratification.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in the Superior Court of the State of California for the County of Los Angeles pursuant to California Code of Civil Procedure Section 410.10.

10. Venue is proper in Los Angeles County, California pursuant to California Code of Civil Procedure Section 392, *et seq.* because Defendant resides/conducts business in Los Angeles County and the damage to Plaintiff occurred in Los Angeles County OR Venue is proper in Los Angeles County because Plaintiff resides/conducts business in Los Angeles County, and a majority of events constituting the basis for this lawsuit and the underlying obligations forming

EISNER, LLP

2844808

3

COMPLAINT

the basis of this lawsuit occurred in the County of Los Angeles.

## **GENERAL ALLEGATIONS**

I.   **Wilson agrees to join CoxReps as Executive Chairman based on Defendants' written promise of equity compensation.**

11.    Plaintiff Ed Wilson is an established media executive with decades of experience in media and television business development.  During Wilson's career, he has served as the President of Chicago-based Tribune Broadcasting, Fox Television Network, CBS Enterprises, and NBC Enterprises.  He is known for his ability to drive complex corporate transactions while building strong industry relationships along the way.  Wilson also sat on the board of the United Service Organizations and various universities, including the Cox School of Business at Southern Methodist University in Dallas, Texas; the Walton School of Business at the University of Arkansas; and the Unity Conference, an organization that mentors underprivileged youth from underrepresented communities.

12.    CoxReps is a media company that provides advertising representation services to television broadcasting stations across the United States.  CoxReps was a subsidiary of Cox Media.  In late 2019, private equity giant Apollo acquired a majority stake in Cox Media.  Soon, Apollo was looking to boost CoxReps's performance, increase its value, and sell the company at a much higher price.

13.    Because of Wilson's sterling reputation and track record, Brian Brady (a member of Cox Media's Board of Directors) introduced Wilson to Apollo.  In January 2020, CoxReps approached Wilson and offered him the position of CoxReps's Executive Chairman. The agreed upon goal was to position the company for a strategic combination and or a sale.  Wilson would receive a small salary plus a 5% stake in the company should the company be combined with another or sold.

14.    The opportunity to manage and grow a company in which Wilson held equity stake was a key reason that he agreed to a substantially reduced salary.  On information and belief, CoxReps paid its former Executive Chairman a salary that was four times more than Wilson's.  This is not to mention other lucrative business and employment opportunities that Wilson passed

EISNER, LLP

2844808

4

COMPLAINT

Exhibit A - Page 7

up, including his then engagement with third party Guggenheim whereby Wilson was paid a comparable fixed compensation plus an upside.[1]  Guggenheim made it clear to Wilson that if he went to work for Apollo, Guggenheim's deal with Wilson would end.

**II.      Fueled by greed, Defendants obstruct a near final partnership deal upon which Wilson's equity was conditioned so they could retain a bigger piece of the pie.**

15.      As the majority owner of Cox Media, Apollo designated its principal, Houston McCurry to oversee CoxReps's progress.  McCurry is a young investment advisor in Apollo's Private Equity group, who bullies his way up the corporate ladder.  Likely in an effort to salvage its tarnished branding with fresh faces, Apollo put McCarry in charge of running Cox Media and CoxReps's major operations.  This includes calling the shots on the strategic partnership between CoxReps and Sinclair, upon which Wilson's equity was conditioned.

16.      Even before officially joining CoxReps, Wilson already began strategizing with Steve Pruett, Cox Media's Executive Chairman, on forging a partnership with Sinclair Broadcast Group Inc. ("Sinclair").  Sinclair is a publicly traded television broadcasting company that owns and operates over 100 television stations across the country.  Under the proposed partnership, in addition to the stations already serviced by CoxReps, Sinclair would also move stations serviced by CoxReps's biggest competitor Katz Media, to CoxReps for representation services. Sinclair and CoxReps would share the profits from the joint venture.  Within a matter of weeks, Wilson put together a pitch deck and built rapport with Sinclair's executives/founders. Steve Pruett was also involved in the process and contributed to the parties' progress. On May 15, 2020, McCurry emailed Wilson and Pruett a list of key terms to negotiate with Sinclair.  These terms include the companies' respective ownership in the joint venture and contemplated "Sinclair [bringing] stations over as soon as possible".

17.      In March 2020, Cox Media provided Wilson with a written employment agreement. The salary was as discussed, but the equity provision stated CoxReps granted Wilson options to

---

[1] Prior to Wilson's employment with CoxReps, Wilson and Guggenheim worked as bankers to assist in Apollo's purchase of Cox Media.  While Apollo paid other bankers in the same deal over $75 million, Wilson and Guggenheim each received $1 million for their services.

EISNER, LLP

2844808

5

COMPLAINT

purchase 5% equity in CoxReps. The options were conditioned on "closing a consortium-related deal of CoxReps and Sinclair or Nexstar [Media Group] (or mutually agreeable equivalent deal structure)." When Wilson questioned Aaron Sobel of Apollo about why the agreement called out Sinclair or Nexstar as potential partners, Sobel told him "Because you are about to close a deal with Sinclair."

18. Meanwhile, Wilson's efforts to build CoxReps were a huge success. By October 2020, CoxReps was generating record revenues and profits under the leadership of Wilson and Pruett (Cox Media's Executive Chairman). Wilson also successfully negotiated a term sheet with Sinclair detailing the companies' strategic partnership and the resulting profit-sharing agreement. Critically, the term sheet captured all the key terms McCurry proposed, including a completion date of January 1, 2021 for Sinclair to transition its broadcast stations to CoxReps. Sinclair was prepared and eager to close the deal. Thus, Wilson immediately approached McCurry to discuss the term sheet and obtain approval to close the transaction.

19. By now however, Defendants had realized that with Wilson driving up CoxReps's performance and value, the profits at stake are substantial. Fueled by greed, Defendants deliberately prevented the Sinclair deal from closing by engaging in a series of delay tactics. Over the next several months, Wilson and Pruett called and emailed McCurry without so much as a word from McCurry or Apollo. When Wilson pressed further, McCurry and Apollo sent their representative to stall Wilson with lies and lame excuses, such that McCurry "was not good at responding to emails. Defendants' complete inaction while knowing that CoxReps could not close the transaction without McCurry's approval was equivalent to an affirmative rejection. Indeed, as the target date for Sinclair to transition its stations long passed without any commitment from CoxReps, the partnership deal languished. Had Defendants moved forward with the term sheet, the transaction with Sinclair would have undoubtedly closed.

20. McCurry later confirmed that his inaction was deliberate, telling Wilson that he was "not interested" and "did not want to do the deal with Sinclair anyway." These bad faith and dishonest actions reflect McCurry's overall approach to doing business.

EISNER, LLP

2844808

6

COMPLAINT

Exhibit A - Page 9

**III.    Defendants consistently affirm Wilson's equity stake in CoxReps to induce his continued employment and to prevent him from taking any legal action until the company sells.**

21.    Because Defendants chose not to close the partnership deal that Wilson successfully procured, Wilson understood that the condition to exercising his options was waived or deemed satisfied.  Defendants consistently reinforced this understanding, especially McCurry.  In or around November 2021, in response to McCurry's suggestion of selling CoxReps to Wilson, Wilson said he was very interested.  Wilson emphasized that any purchase price must account for his 5% equity stake in the company.  In later discussions about the potential purchase, Wilson frequently mentioned his 5% ownership in CoxReps.  Never once did McCurry question Wilson's entitlement to equity.  Wilson's group of investors, Peter Dunn and Kevin Barth, were also present during these meetings and witnessed the conversations with McCurry acknowledging Wilson's equity stake in CoxReps.

22.    In fact, McCurry used the equity stake as bait for Wilson to continue building CoxReps, cooperate with the sale of the company, and maximize Defendants' profits.  For instance, when McCurry ultimately rejected Wilson's offer to buy CoxReps, McCurry flat out said he was simply using Wilson to drive up the asking price.  The ploy went on until a few weeks prior to the sale of CoxReps became final.

23.     In July 2022, it was publicly announced that One Equity Partners ("OEP") was buying CoxReps for, what is believed to be, approximately $250 million.  This is in stark contrast to CoxReps valuation at approximate $50 million when Wilson began reviving the company.  Remarkably, when Wilson approached Defendants about his equity compensation, Defendants told Wilson that he would get nothing.  Defendants asserted, for the first time, that Wilson failed to meet the condition to receive equity because the Sinclair deal did not close.

24.    Although Wilson gave Defendants many opportunities to make things right, at McCurry's behest, Defendants refused.  Brian Brady (who sat on the Board of Cox Media) knew about Wilson's 5% equity in CoxReps, and encouraged Wilson to pursue the matter with Apollo and McCurry.  When Wilson approached Apollo, Apollo claimed it was a Cox Media issue.  But Wilson learned that the Board of Cox Media was unaware of the dispute because McCurry failed

to inform the Board.  Ultimately, even though Wilson was told by Brady and others from Apollo that the matter would settle after mediation, McCurry refused to compromise.

25.    Apparently now that CoxReps was sold, McCurry had no interest in playing nice. In fact, McCurry threatened to "destroy" Wilson and send Apollo's army of lawyers to "bury" him in legal fees if he filed a lawsuit against Apollo.  Such abuse of power by McCurry was not an isolated incident. On information and belief, other management level employees received similar treatment from McCurry, including Cox Media's former CFO and Core Media Group's former President.  Upon Apollo owning a majority stake in the Cox enterprise, McCurry baselessly fired Cox Media's former CFO and refused to pay him any severance that he was entitled.

26.    As a result of Defendants' wrongful conduct, Wilson suffered at least $12,000,000 in monetary damages.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Plaintiff Wilson against Defendant CoxReps)

27.    Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

28.    Wilson and CoxReps are parties to a valid and enforceable written employment agreement dated March 2, 2020.  Pursuant to the employment agreement, Wilson agreed to serve as the company's Executive Chairman on a full-time basis. In exchange, in addition to a fixed salary, CoxReps granted Wilson options to purchase 5% equity in CoxReps.  As a condition to exercising the options, Wilson was required to forge a strategic partnership between CoxReps and third-party Sinclair.

29.    The opportunity to manage and grow a company in which Wilson held equity stake was material to the employment agreement.  Wilson would not have accepted the position based on a substantially reduced salary without equity compensation.   On information and belief, CoxReps paid its former Executive Chairman a salary that was four times more than Wilson's. This is not to mention other lucrative business and employment opportunities that Wilson turned down.

EISNER, LLP

2844808

8

COMPLAINT

30.    Wilson performed all material conditions and terms required under the employment agreement, including without limitation, successfully procured a term sheet for CoxReps's strategic partnership with Sinclair.  The term sheet contained all the key proposed terms as Defendants requested.  Sinclair was ready and eager to close the deal.  Defendants then deliberately obstructed and prevented the partnership deal from closing so they could maximize their profits by retaining all the company's equity.  CoxReps therefore, waived the condition to Wilson's entitlement to the 5% equity, or excused Wilson from performance.

31.    Although Defendants chose not to pursue the Sinclair partnership deal that Wilson successfully forged as instructed, and therefore waived the condition to Wilson's entitlement to the 5% equity, or excused Wilson from performance, CoxReps blatantly refused to honor its contractual obligations.  On information and belief, in mid-2022, CoxReps was sold to OEP for approximately $250 million.  Upon closing, payment of Wilson's 5% equity compensation was due.  Despite Wilson's requests that CoxReps perform its express promise under the employment agreement, CoxReps failed to do so.

32.    As a direct and proximate result of these material breaches, Wilson has suffered monetary damages in an amount to be proven at trial, but in an amount in excess of $12,000,000.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good faith and Fair Dealing

### (Plaintiff Wilson against Defendant CoxReps)

33.    Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

34.    The March 2, 2020 employment agreement between Wilson and CoxReps contained an implied covenant that imposed on CoxReps a duty to act in good faith and not to deprive Wilson his benefits of the bargain.  CoxReps's promise of equity compensation was a key reason that Wilson agreed to provide services on a substantially reduced salary and forego other lucrative business and employment opportunities.  Wilson would not have accepted the position based on a substantially reduced salary without equity compensation.   On information and belief, CoxReps paid its former Executive Chairman a salary that was four times more than Wilson's.

EISNER, LLP

2844808

9

COMPLAINT

Exhibit A - Page 12

35.    Wilson performed all material conditions and terms required under the employment agreement, including without limitation, successfully procured a term sheet for CoxReps's strategic partnership with Sinclair.  The term sheet contained all the key proposed terms as Defendants requested.  Sinclair was ready and eager to close the deal.  Defendants then deliberately obstructed and prevented the partnership deal from closing so they could maximize their profits by retaining all of the company's equity.  CoxReps therefore, waived the condition to Wilson's entitlement to the 5% equity, or excused Wilson's performance.

36.    Thereafter, Defendants, including CoxReps, consistently affirmed and reinforced Wilson's entitlement to equity on numerous occasions from November 2021 through mid-2022, further waiving or excusing Wilson from performing the condition to exercise his options of owning 5% of CoxReps.

37.    By choosing not to close the Sinclair partnership deal, and refusing to perform its contractual promise to Wilson despite waiving the condition and/or ratifying Wilson's entitlement to equity, CoxReps breached the implied covenant of good faith and fair dealing.

38.    As a direct and proximate result of these material breaches, Wilson has suffered monetary damages in an amount to be proven at trial, but in an amount in excess of $12,000,000.

**THIRD CAUSE OF ACTION**

**Intentional Interference with Contractual Relations**

**(Plaintiff Wilson against Defendants Apollo, McCurry and Cox Media)**

39.    Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

40.    Wilson had a valid and enforceable contract with CoxReps, whereby Wilson agreed to serve as the company's Executive Chairman on a full-time basis. In exchange, in addition to a fixed salary, Wilson was entitled to a 5% equity stake in CoxReps, conditioned on the closing of a strategic partnership between CoxReps and third-party Sinclair.

41.    Apollo, McCurry and Cox Media, which controlled, operated, and/or owned CoxReps, had actual knowledge of the contract between CoxReps and Wilson; in fact, Defendants deliberately disrupted the contractual relationship specifically because they knew that Wilson's

EISNER, LLP

2844808

10

COMPLAINT

equity interests were subject to the closing of a strategic partnership deal.

42.    Defendants intentionally and actually disrupted Wilson's relationship with CoxReps by deliberately obstructing and preventing the Sinclair deal from closing by, among other things, engaging in delay tactics.  Defendants, especially McCurry did so despite knowing that Wilson had no authority and needed McCurry's approval to close the transaction with Sinclair.  In fact, McCurry later confirmed that his inaction was deliberate, telling Wilson that he was "not interested" and "did not want to do the deal anyway."  As a result of Defendants' wrongful interferences, CoxReps refused to honor its contractual promise to compensate Wilson with equity in the company.

43.    Defendants willfully interfered with Wilson's contractual relations with malice, oppression, and/or fraud, including without limitation as part of a ploy against Wilson to withhold his equity stake so that Defendants could maximize their profits from the sale of CoxReps. Wilson is thus entitled to all exemplary and punitive damages available under applicable law.

## FOURTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Relations

### (Plaintiff Wilson against Defendants Apollo, McCurry and Cox Media)

44.    Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

45.    Wilson had an economic relationship with CoxReps, whereby Wilson agreed to serve as the company's Executive Chairman on a full-time basis. In exchange, in addition to a fixed salary, Wilson was entitled to a 5% equity stake in CoxReps, conditioned on the closing of a strategic partnership between CoxReps and third-party Sinclair.

46.    Apollo, McCurry and Cox Media, which controlled, operated, and/or owned CoxReps, had actual knowledge of the Wilson's economic relationship with CoxReps; in fact, Defendants deliberately disrupted the economic relationship specifically because they knew that Wilson's equity interests were subject to the closing of a strategic partnership deal and participated in Wilson's efforts to close the Sinclair transaction.

47.    Defendants intentionally and actually disrupted Wilson's relationship with

EISNER, LLP

2844808

11

COMPLAINT

CoxReps by deliberately obstructing and preventing the Sinclair deal from closing by, among other things, engaging in delay tactics. Defendants, especially McCurry did so despite knowing that Wilson had no authority and needed McCurry's approval to close the transaction with Sinclair. In fact, McCurry later confirmed that his inaction was deliberate, telling Wilson that he was "not interested" and "did not want to do the deal anyway." As a result of Defendants' wrongful interference with Wilson's prospective economic relations, CoxReps refused to honor its contractual promise to compensate Wilson with equity in the company.

48. Defendants' use of misrepresentations and omissions to deliberately cause the Sinclair partnership deal to languish is fraudulent and independently wrongful.

49. Defendants willfully interfered with Wilson's prospective relations with malice, oppression, and/or fraud, including without limitation as part of a ploy against Wilson to withhold his equity stake so that Defendants could maximize their profits from the sale of CoxReps. Wilson is thus entitled to all exemplary and punitive damages available under applicable law.

## FIFTH CAUSE OF ACTION

### Fraud

### (Plaintiff Wilson against Defendants Apollo, McCurry and Cox Media)

50. Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

51. Defendants made false and fraudulent misrepresentations to Wilson by repeatedly promising and affirming his entitlement to 5% equity in CoxReps despite having no intention to perform. Defendants did so to induce Wilson to continue building CoxReps, cooperate with the sale of the company, and maximize Defendants' profits upon their sale of CoxReps. For instance, in or around November 2021, in response to McCurry's suggestion of selling CoxReps to Wilson, Wilson said he was very interested. Wilson also made it clear to McCurry that any purchase price must account for Wilson's 5% equity stake. In later discussions about the potential purchase, Wilson frequently mentioned his 5% ownership in CoxReps. Never once did McCurry question Wilson's entitlement to equity.

52. To the contrary, Defendants, especially McCurry, used equity as bait for Wilson to

assist with the sale of CoxReps and to prevent any dispute over his equity interests from driving away potential buyers of CoxReps. When McCurry ultimately rejected Wilson's offer to buy CoxReps, McCurry flat out said he was simply using Wilson to drive up the asking price. In other words, McCurry was justifying his action by implying that Wilson's equity would be worth more with a higher purchase price. The ploy went on until a few weeks prior to the sale of CoxReps became final.

53. Wilson reasonably relied on these false and fraudulent misrepresentations by staying employed at CoxReps and assisting with the sale of CoxReps for a salary that was a fraction of what the former Executive Chairman received. Indeed, absent Defendants' fraudulent inducement, Wilson would have left CoxReps much sooner to pursue other lucrative employment and business opportunities. Defendants had no intention of ever paying Wilson for his share of the company's equity. As soon as CoxReps was sold to OEP in mid-2022, Defendants reneged on their promises. Defendants told Wilson that he would get nothing.

54. As a result of Defendants' wrongful conduct, Wilson suffered substantial monetary damages, including lost opportunities. Wilson is informed and believes that Defendants' actions were malicious, fraudulent, oppressive and intended to injure Wilson's interests. Wilson is thus entitled to all exemplary and punitive damages available under applicable law.

## SIXTH CAUSE OF ACTION

### Quasi-Contract/Unjust Enrichment

### (Plaintiff Wilson against all Defendants)

55. Wilson incorporates herein by reference the allegations contained in each and every paragraph, as though set forth in full.

56. Wilson entered into the March 2, 2020 employment agreement with CoxReps based on its promise that Wilson would receive options to purchase 5% equity in CoxReps, conditioned on "closing a consortium-related deal of CoxReps and Sinclair or Nexstar [Media Group] (or mutually agreeable equivalent deal structure)." The equity compensation was highly material to Wilson's employment agreement with CoxReps, without which Wilson would not agree to work for CoxReps at a substantially reduced salary.

EISNER, LLP

2844808

13

COMPLAINT

Exhibit A - Page 16

57. Accordingly, to the extent that the condition to Wilson's entitlement to the 5% equity in CoxReps is found to be not satisfied or legal remedies are otherwise unavailable, Defendants have been unjustly enriched through mistake and/or fraud because they received consideration for the contract that vastly exceeds the fair value of the services Wilson rendered which, among other things, increased the company's value exponentially.

58. Therefore, to the extent the condition to Wilson's entitlement to the 5% equity in CoxReps is found to be not satisfied or legal remedies are otherwise unavailable, Wilson is entitled to restitution of the benefits that were mistakenly and/or fraudulently – and, thus, unjustly – conferred upon Defendants by Wilson.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For actual and compensatory damages in an amount to be proven at trial;

2. For exemplary and punitive damages in an amount to be determined at the time of trial;

3. For attorneys' fees and costs as permitted by applicable law;

4. For pre-judgment and post-judgment interest at the maximum legal rate; and

5. For such other and further relief as the Court may deem just and proper.

DATED: November 6, 2023                    EISNER LLP


By: _____
JEFFERY D McFARLAND
Attorneys for Plaintiff
Ed Wilson

EISNER, LLP

2844808

14

COMPLAINT

Exhibit A - Page 17

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action triable by a jury.


DATED:  November 6, 2023                    EISNER LLP


By: _____
JEFFERY D McFARLAND
Attorneys for Plaintiff
Ed Wilson

EISNER, LLP

2844808

15

COMPLAINT